TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
MORGAN J. COHEN (Cal. Bar No. Pending)
SAMUEL J. DIAZ (Cal. Bar No. 304503)
Assistant United States Attorney
General Crimes Section
    1200 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-3045/2848
    Facsimile: (213) 894-6269
    E-mail:    samuel.diaz@usdoj.gov
           morgan.cohen@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 20-115-MWF |
|---|---|
| Plaintiff, | GOVERNMENT'S TRIAL MEMORANDUM |
| v. | Trial Date: July 13, 2021 |
| | Trial Time: 8:30 a.m. |
| ARTHUR LOTTIE, JR., | Location: Courtroom of the |
| | Hon. Michael W. |
| Defendant. | Fitzgerald |

    Plaintiff United States of America, by and through its counsel of record, the Acting United States Attorney for the Central District of California and Assistant United States Attorneys Morgan J. Cohen and Samuel J. Diaz, hereby files its Trial Memorandum.  Pursuant to the Court's Criminal Motion and Trial Order, the government has conferred with defendant on the statement of facts, statement of charges, time estimate for cross-examination of the government's witnesses, and legal and evidentiary issues as set forth herein.

1      The government respectfully requests leave to file additional

2  memoranda as may become appropriate during the course of trial.

3   Dated: July 6, 2021              Respectfully submitted,

4                                    TRACY L. WILKISON
                                     Acting United States Attorney
5
                                     SCOTT M. GARRINGER
6                                    Assistant United States Attorney
                                     Chief, Criminal Division
7

8                                    _____/s/_____
                                     MORGAN J. COHEN
9                                    SAMUEL J. DIAZ
                                     Assistant United States Attorneys
10
                                     Attorneys for Plaintiff
11                                   UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

<u>DESCRIPTION</u>                                                                <u>PAGE</u>

I.    INTRODUCTION...................................................................1

II.   STATUS OF THE CASE.............................................................1

      A.   Indictment...............................................................1

      B.   Discovery................................................................1

      C.   Trial....................................................................2

      D.   Pretrial Motions.........................................................2

      E.   Jury Instructions........................................................4

      F.   Verdict Form.............................................................4

III.  STATEMENT OF FACTS............................................................4

IV.   THE CHARGED OFFENSE...........................................................5

      A.   Statement of the Charges.................................................5

      B.   Charged Offense..........................................................6

      C.   Elements of Offense......................................................6

V.    LEGAL AND EVIDENTIARY ISSUES..................................................8

      A.   Medical Records..........................................................8

      B.   Video Recordings.........................................................9

      C.   Hearsay..................................................................9

           1.   Defendant's Statements are Not Hearsay When
                Introduced by the Government........................................9

           2.   Defendant's Statements are Hearsay When Offered
                by the Defendant...................................................10

           3.   Statements to Defendant............................................12

      D.   Scope of Cross-Examination by Defendant.................................12

      E.   Lay Opinion Testimony...................................................13

      F.   Character Evidence......................................................14

**TABLE OF CONTENTS (CONTINUED)**

DESCRIPTION                                                          PAGE

    G.   Defendant's Testimony Regarding Character/Impeachment
        by Contradiction.........................................16

    H.   Defendant Should Be Precluded From Introducing
        Evidence Not Produced In Discovery.......................18

    I.   Affirmative Defenses.....................................18

        1.   Insanity Defense...................................18

        2.   Mental Incapacity / Mental Health Issues...........18

        3.   Self-Defense.......................................20

    J.   Jury Nullification......................................20

ii

**TABLE OF AUTHORITIES**

DESCRIPTION                                                              PAGE

**CASES**

Breneman v. Kennecott Corp.,

    799 F.2d 470, 473 (9th Cir. 1986).............................11

Horning v. District of Columbia,

    254 U.S. 135, 138 (1920).....................................20

Michelson v. United States,

    335 U.S. 469, 477 (1948).....................................15

Michelson v. United States,

    335 U.S. 469, 480, 486 (1948)................................14

Roaers v. United States,

    422 U.S. 35, 40 (1975).......................................21

Tome v. United States,

    513 U.S. 150, 158 (1995).....................................11

United States v. Bailey, .....................................

    405 F.3d 102, 111 (1st Cir. 2005).............................8

United States v. Biggs,

    441 F.3d 1069, 1071 (9th Cir. 2006)..........................20

United States v. Black, .....................................

    767 F.2d 1334, 1341 (9th Cir. 1985)..........................12

United States v. Blackwood,

    878 F.2d 1200, 1202 (9th Cir. 1989)...........................9

United States v. Bright,

    588 F.2d 504, 512 (5th Cir. 1979)............................15

United States v. Burreson,

    643 F.2d 1344, 1349 (9th Cir. 1981)......................10, 11

iii

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. Castillo,
     181 F.3d 1129 (9th Cir. 1999)...............................17

United States v. Collicott,
     92 F.3d 973, 983 (9th Cir. 1996..........................11, 12

United States v. DeSantis,
     565 F.3d 354, 362 (7th Cir. 2009)............................8

United States v. Dougherty,
     473 F.2d 1113, 1133 (D.C. Cir. 1972)........................21

United States v. Fernandez,
     839 F.2d 639, 640 (9th Cir. 1988)...........................10

United States v. Gadson,
     763 F.3d 1189, 1209 (9th Cir. 2014.........................13

United States v. Gaudin,
     515 U.S. 506, 520 (1995)....................................21

United States v. Giese,
     597 F.2d 1170, 1190 (9th Cir. 1979)......................15, 16

United States v. Gorham,
     523 F.2d 1088, 1097-98 (D.C. Cir. 1975)....................21

United States v. Hedgcorth,
     873 F.2d 1307, 1313 (9th Cir. 1989).........................15

United States v. Jim,
     865 F.2d 211, 215 (9th Cir. 1989)............................7

United States v. Jones,
     933 F.2d 807, 811 (10th Cir. 1991).........................21

United States v. Keiser,
     57 F.3d 847, 855 (9th Cir. 1995)............................16

iv

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

United States v. King,
    587 F.2d 956, 961 (9th Cir. 1978)...............................9

United States v. Lopez-Figueroa,
    316 F. App'x 548, 550 (9th Cir. 2008).........................12

United States v. McCollom,
    664 F.2d 56, 58 (5th Cir. 1981)...............................15

United States v. Miranda-Uriarte,
    649 F.2d 1345, 1353-54 (9th Cir. 1981)........................13

United States v. Mitchell,
    502 F.3d 931, 965 (9th Cir. 2007).............................11

United States v. Myers,
    972 F.2d 1566, 1572 (11th Cir. 1992)...........................8

United States v. Navarro-Varelas,
    541 F.2d 1331, 1334 (9th Cir. 1976)...........................11

United States v. Ornelas,
    906 F.3d 1138, 1148 (9th Cir. 2018)...........................20

United States v. Ortega,
    203 F.3d 675, 682 (9th Cir. 2000).............................10

United States v. Pino-Noriega,
    189 F.3d 1089, 1097 (9th Cir. 1999)...........................13

United States v. Powell,
    955 F.2d 1206, 1213 (9th Cir. 1991)...........................21

United States v. Santana-Camacho,
    931 F.2d 966, 967-68 (1st Cir. 1991)..........................14

United States v. Skeet,
    665 F.2d 983, 985 (9th Cir. 1982).............................13

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                PAGE

United States v. Smith,
    591 F.3d 974, 979-80 (8th Cir. 2010)............................9

United States v. Span,
    970 F.2d 573 (9th Cir. 1992).................................20

United States v. Urena,
    659 F.3d 903, 907 (9th Cir. 2011)............................20

United States v. Valerio,
    441 F.3d 837, 844 (9th Cir. 2006)............................12

United States v. VonWillie,
    59 F.3d 922, 929 (9th Cir. 1995).............................13

United States v. Yazzie,
    59 F.3d 807, 812 (9th Cir. 1995)..............................8

Zal v. Steppe,
    968 F.2d 924, 930 (9th Cir. 1992)............................21

**STATUTES**

18 U.S.C. §§ 111(a)(1), (b)....................................5, 6

18 U.S.C. § 1114................................................6

18 U.S.C. § 1365(h)(4).........................................7

18 U.S.C. § 1515(a)(5).........................................7

18 U.S.C. § 1864(d)(2).........................................8

California Welfare and Institutions Code § 5150...............20

**OTHER AUTHORITIES**

Ninth Circuit Manual of Model Criminal Jury Instructions No. 8.4....7

Ninth Circuit Manual of Model Jury Instructions, No. 6.8 ..........20

**RULES**

Fed. R. Crim. Pro 12.2(a).......................................18

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                                    PAGE

Fed. R. Crim. Pro. 12.2(b)...........................................19

Fed. R. Evid. 106....................................................11

Fed. R. Evid. 405(a).................................................15

Fed. R. Evid. 611(b).................................................13

Fed. R. Evid. 801(c).................................................12

Fed. R. Evid. 801(d)(2)(A)...........................................10

Fed. R. Evid. 801(d)(2)(B)...........................................10

Fed. R. Evid. 901(b)..................................................9

Federal Rule of Criminal Procedure 405...............................15

Federal Rule of Evidence 701.........................................13

Federal Rule of Evidence 803(4).......................................8

Rule 16 of the Federal Rules of Criminal Procedure...................18

Rule 404(a) of the Federal Rules of Evidence.........................14

Rule 404(a)(2)(A)....................................................15

Rule 404(a)(2)(B)....................................................15

Rule 801(d)(1)(B)....................................................11

1

<u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2

**I.    INTRODUCTION**

3

On January 29, 2020, defendant Arthur Lottie, Jr. ("defendant")

4

entered the Social Security Office located in Panorama City,

5

California.  Defendant cut through a line of customers waiting to

6

speak with Social Security Administration ("Social Security")

7

employees, bumping several Social Security customers on his way

8

towards the front of the line.  Defendant then returned to the back

9

of the line and proceeded to strike or kick people waiting in line.

10

Two contracted security guards for the Federal Protective Service,

11

including victim J.R., intervened and tried to restrain defendant.

12

Defendant then intentionally punched J.R. in the head and bit J.R.'s

13

left forearm, puncturing his skin.

14

**II.   STATUS OF THE CASE**

15

**A.    Indictment**

16

The single-count indictment was filed on March 3, 2020, and

17

charges defendant with assault on a person assisting federal officers

18

and employees resulting in bodily injury, in violation of 18 U.S.C.

19

§ 111(a)(1), (b).

20

**B.    Discovery**

21

To date, the government has produced approximately 750 pages of

22

discovery, including investigation reports, photographs, medical

23

records, and video recordings from three different cameras which

24

captured the assault.

25

The government has requested but has not received reciprocal

26

discovery from defendant.  As set forth below in Section V.H., the

27

Court should exclude defendant from affirmatively introducing any

28

discovery not previously produced to the government.

1     **C.   Trial**

2     <u>Trial Date</u>:  Jury Trial is scheduled for July 13, 2021, at

3  8:30 a.m., before the Honorable Michael W. Fitzgerald.

4     <u>Estimated Time</u>:  The government estimates that its case-in-

5  chief, including the defense's cross-examination of the government's

6  witnesses, will take two to three days.  The government anticipates

7  calling up to the following seven witnesses in its case-in-chief,

8  with defendant's estimated time for cross-examination in parentheses:

9        1.  <u>Diane Abato</u> (10 minutes)

10       2.  <u>Michaelyn Alson</u> (30 minutes)

11       3.  <u>Matthew Bonaventure (J.R.'s Treating Physician's</u>
12          <u>Assistant)</u> (5 minutes)

        4.  <u>Officer Tigran Chayloyan</u> (1 hour)
13

        5.  <u>Officer J.R.</u> (3 hours)
14

15       6.  <u>Michael Rosen</u> (30 minutes)

        7.  <u>Case Agent Thomas Vasquez</u> (1 hour)
16

17     Should defendant testify or offer other witnesses in his

18  defense, the government may call rebuttal witnesses.

19     <u>Stipulations</u>:  The parties have not entered into any

20  stipulations.

21     <u>Custody</u>:  Defendant is released on bond pending trial.

22     <u>Interpreter</u>:  The government is not aware of any witnesses who

23  will require an interpreter in its case in chief.

24     **D.  Pretrial Motions**

25     On June 30, 2021, the government filed a motion <u>in limine</u>

26  seeking to exclude evidence and argument:  (1) that at the time

27  defendant assaulted J.R., defendant was homeless, lacked resources,

28  under the influence of drugs or alcohol, suffering from mental

illness, and had not taken medication prescribed to treat his mental illness; and (2) regarding the propriety of the federal charges in this case. ("Government's First Motion in Limine"). (Dkt. 72.) On July 6, 2021, defendant filed a partial opposition to the motion. (Dkt. 81.)

On July 1, 2021, defendant filed an Ex Parte Application for Issuance of Out of District Subpoena ("Subpoena Application"). (Dkts. 74, 75). On July 2, 2021, the government filed an opposition.

On July 2, 2021, the government filed a motion in limine to exclude certain prior acts by victim J.R. ("Government's Second Motion in Limine"). (Dkt. 79.) Defendant has not yet filed a written opposition to the motion.

On July 6, 2021, defendant filed an Objection to the Protective Order. (Dkt. 84.) The government intends to file a written response by July 9, 2021.

On July 6, 2021, the Court held a hearing on the Government's First Motion in Limine and the Subpoena Application. The Court orally granted in part and denied in part the Government's First Motion in Limine. Specifically, the Court denied the motion to the extent it would exclude testimony from witnesses regarding their perception of defendant, including statements made by defendant leading up to and during his altercation with the officers, but otherwise granted the motion. Additionally, the Court reserved judgment on the Subpoena Application pending review of documents to be lodged in camera by the government. On July 6, 2021, the government lodged those documents in camera with the Court.

All other pretrial motions have been decided.

3

1

**E.   Jury Instructions**

2     The parties filed joint proposed jury instructions on July 6,

3 2021. (Dkt. 86.)

4

**F.   Verdict Form**

5     The parties intend to file a joint proposed verdict form on

6 July 6, 2021.

7 **III. STATEMENT OF FACTS[1]**

8     The government expects that the evidence at trial will establish

9 the following facts, among others:

10     On January 29, 2020, defendant entered the Social Security

11 Office located in Panorama City, California (the "Social Security

12 Office").  Defendant cut through a line of customers waiting to speak

13 with Social Security Administration employees, bumping several of

14 them on his way towards the front of the line, before returning to

15 the back of the line where he swung his arm out, kicked the wall, and

16 then struck or kicked customers in line.

17     J.R., a contracted Protective Services Officer ("Officer") for

18 the Federal Protective Service stationed in the Social Security

19 Office, approached defendant and asked him to leave.  At least one of

20 the customers in the line informed Officer J.R. that defendant had

21 had struck or kicked them.  Officer J.R. then informed defendant that

22 he would be detained.  A second Officer, Tigran Chayloyan, approached

23 while J.R. was speaking with defendant.  Officer J.R. proceeded to

24 attempt to handcuff defendant, and defendant began resisting and

25 pulling away from him.  As Officers J.R. and Chayloyan attempted to

26 restrain defendant, defendant intentionally punched J.R. in the head

27

28     [1] Defendant does not agree with the government's Statement of
Facts.

4

and bit his left forearm, puncturing the skin.  At all relevant times during Officer J.R.'s interaction with defendant, he was assisting officers and employees of the United States in their performance of their official duties.

**IV.  THE CHARGED OFFENSE**

   **A.    Statement of the Charges[2]**

   The government has charged defendant Arthur Lottie, Jr. with assault on a person assisting federal officers and employees resulting in bodily injury, in violation of 18 U.S.C. §§ 111(a)(1), (b).

   The government alleges that, on or about January 29, 2020, in Los Angeles County, within the Central District of California, Mr. Lottie intentionally and forcibly assaulted, resisted, opposed, impeded, intimidated, and interfered with victim J.R., a Protective Security Officer employed by Paragon Systems, Inc., assisting officers and employees of the United States Social Security Administration and United States Federal Protective Service in the Panorama City field office, and in so doing made physical contact with J.R., while J.R. was engaged in, and on account of, the performance of J.R.'s official duties, resulting in the infliction of bodily injury.

   Mr. Lottie denies the government's allegations and has pleaded not guilty to the charge.

---

   [2] Defendant objects to the inclusion of the second paragraph in this subsection, but otherwise agrees with the government's Statement of the Charges.

**B. Charged Offense**

Title 18, United States Code, Section 111(a)(1), (b) provides, in pertinent part, that "[w]hoever . . . forcibly assaults . . . any person designated in section 1114 of this title while engaged in or on account of the performance of official duties," and "inflicts bodily injury shall, shall be fined under this title or imprisoned not more than 20 years, or both."

Title 18, United States Code, Section 1114 it a crime to kill "any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance."

**C. Elements of Offense**

For defendant to be guilty of the crime charged in the indictment, that is, assault on a person assisting federal officers and employees resulting in bodily injury, in violation of 18 U.S.C. §§ 111(a)(1),(b), the government must prove the following beyond a reasonable doubt:

(1) Defendant forcibly assaulted J.R.;

(2) J.R. was a protected officer or employee at the time he was assaulted;

(3) Defendant did so while J.R. was engaged in, or on account of, his official duties; and

(4) Defendant inflicted bodily injury.

1   Ninth Circuit Manual of Model Criminal Jury Instructions No. 8.4

2   [Assault on Federal Officer or Employee (18 U.S.C. § 111(b))]

3   (modified to reflect charges).

4       There is a forcible assault when one person intentionally

5   strikes another, or willfully attempts to inflict injury on another,

6   or intentionally threatens another coupled with an apparent ability

7   to inflict injury on another which causes a reasonable apprehension

8   of immediate bodily harm.  Ninth Circuit Manual of Model Criminal

9   Jury Instruction No. 8.4 [Assault on Federal Officer or Employee (18

10  U.S.C. § 111(b))].  Violation of 18 U.S.C. § 111 is a general intent

11  crime.  <u>United States v. Jim</u>, 865 F.2d 211, 215 (9th Cir. 1989).

12      A protected officer or employee includes officers and employees

13  of the United States and any person assisting an officer or employee

14  of the United States while such an officer or employee is engaged in

15  the performance of official duties.  18 U.S.C. § 1114.  Officers and

16  employees of the Federal Protective Service, which is part of the

17  Department of Homeland Security, are officers and employees of the

18  United States.

19      The government does not have to prove that the defendant knew

20  that J.R. was a protected officer or employee.  To satisfy this

21  second element, the government need only prove that J.R. was a

22  protected officer or employee at the time of the assault.  Ninth

23  Circuit Manual of Model Criminal Jury Instructions No. 8.4 [Assault

24  on Federal Officer or Employee (18 U.S.C. § 111(b))].

25      The term "bodily injury" means a cut, abrasion, bruise, burn, or

26  disfigurement; physical pain; illness; impairment of the function of

27  a bodily member or mental faculty; or any other injury to the body,

28  no matter how temporary.  18 U.S.C. §§ 1365(h)(4), 1515(a)(5), and

1   1864(d)(2) (bodily injury defined for purposes of other federal

2   statutes); see also Eleventh Circuit Pattern Criminal Jury

3   Instruction OI 1.2 [18 U.S.C. § 111(b)]; United States v. Bailey, 405

4   F.3d 102, 111 (1st Cir. 2005); United States v. Myers, 972 F.2d 1566,

5   1572 (11th Cir. 1992); United States v. DeSantis, 565 F.3d 354, 362

6   (7th Cir. 2009); Seventh Circuit Criminal Jury Instructions (2012

7   ed.).

8   **V.   LEGAL AND EVIDENTIARY ISSUES**

9          **A.   Medical Records**

10          The government intends to introduce certain of the medical

11   records of victim J.R. to prove that he sustained bodily injury from

12   the assault.  Specifically, the government intends to introduce a

13   one-page record made on January 29, 2020, following J.R.'s first

14   post-assault visit to a health care provider.  The record states,

15   among other things, the alleged cause of J.R.'s injuries, the health

16   care provider's diagnoses, and J.R.'s anticipated maximum medical

17   improvement date, which is the date on which J.R. was projected to

18   fully recover from his injuries.  Under Federal Rule of Evidence

19   803(4), any statement that describes the general cause of a

20   declarant's medical symptoms or conditions constitutes an exception

21   to the hearsay rule.  However, "[s]tatements as to fault" are not

22   admissible as non-hearsay statements under Rule 803(4), except in

23   certain sexual abuse cases.  United States v. Yazzie, 59 F.3d 807,

24   812 (9th Cir. 1995).

25          Defendant objects to the admission of this medical record.

26

27

28

**B.   Video Recordings**

The government will introduce surveillance video showing the interior of the Social Security Office on the date in question.  The surveillance video does not have sound.

A recording is admissible upon a showing that it is "accurate, authentic, and generally trustworthy."  <u>United States v. King</u>, 587 F.2d 956, 961 (9th Cir. 1978).  For example, testimony that a recording depicts evidence that the witness observed is sufficient to authenticate the recording.  Fed. R. Evid. 901(b); <u>United States v. Smith</u>, 591 F.3d 974, 979-80 (8th Cir. 2010).  The government will rely on the testimony of J.R. to authenticate the video recordings. As long as the government makes a prima facie showing of authenticity, the "probative force of the evidence offered is, ultimately, an issue for the jury."  <u>United States v. Blackwood</u>, 878 F.2d 1200, 1202 (9th Cir. 1989).

Defendant does not object to the admission of the surveillance videos in this case.

**C.   Hearsay**

        1.   <u>Defendant's Statements are Not Hearsay When Introduced by the Government</u>

The government intends to introduce the following statements by defendant to Officers J.R. and Chayloyan immediately prior to the assault:

- "Fuck you mother fucker, I do what I want!"
- "Fuck you, I'll fuck you up!"
- "Fuck you mother fucker, I kicked the lady and I will kick you too!"

- "Fuck you motherfucker, I do what I want!  Do something if you can."

Additionally, the government intends to introduce the following statement by defendant heard by witness Diane Abato immediately following the assault:  "Sorry."

A defendant's out-of-court statement is admissible if offered against him by the government.  See Fed. R. Evid. 801(d)(2)(A); United States v. Fernandez, 839 F.2d 639, 640 (9th Cir. 1988).  An out-of-court statement offered against the defendant is also not hearsay if the defendant "manifested an adoption or belief in its truth . . . ."  Fed. R. Evid. 801(d)(2)(B).

Defendant has not identified any objection to these statements.

    2.   Defendant's Statements are Hearsay When Offered by the Defendant

Notwithstanding the Court's July 6, 2021, ruling from the bench permitting witness testimony as to any statements made by defendant, the government respectfully reserves the right to object at trial to defendant's introduction of his own prior statements, either on direct examination of his own witnesses, or cross-examination of the government's witnesses, if those statements are inadmissible hearsay. See United States v. Ortega, 203 F.3d 675, 682 (9th Cir. 2000). Indeed, even where the government elicits the inculpatory portion of a defendant's statement from a witness, on cross-examination, the defendant is not entitled to elicit any purportedly exculpatory portion of the defendant's own statement.  See Fernandez, 839 F.2d at 640); United States v. Burreson, 643 F.2d 1344, 1349 (9th Cir. 1981). Accordingly, should defendant attempt to introduce, through defendant's or witness testimony, the following statements

purportedly made by defendant prior to, during, or after his assault on J.R., the Court should exclude them if they constitute inadmissible hearsay: (1) "I'm off my meds"; (2) "I'm okay"; (3) "it won't happen again"; and (4) "I can't breathe."  Defendant has indicated that he will seek to introduce the first three statements.

Nor can defendant admit his own prior statements as prior consistent statements under Rule 801(d)(1)(B).  That rule makes prior consistent statement admissible to rebut a charge of <u>recent</u> fabrication.  <u>See</u> <u>United States v. Navarro-Varelas</u>, 541 F.2d 1331, 1334 (9th Cir. 1976).  Significantly, "the consistent statements must have been made <u>before</u> the alleged influence, or motive to fabricate, arose."  <u>Tome v. United States</u>, 513 U.S. 150, 158 (1995) (citation omitted); <u>see also</u> <u>Breneman v. Kennecott Corp.</u>, 799 F.2d 470, 473 (9th Cir. 1986) ("A prior consistent statement is admissible only if it was made <u>before</u> the witness had a motive to fabricate.").

The only recognized limitation of this principle that defendant cannot admit his own statements is the "doctrine of completeness," which has been applied by some courts to admit additional portions of a defendant's prior statements where necessary to explain an admitted statement, place it in context, or avoid misleading the trier of fact.  <u>See</u> Fed. R. Evid. 106; <u>Burreson</u>, 643 F.2d at 1349.  However, the completeness doctrine does not require introduction of portions of a statement that are neither explanatory of, nor relevant to, the admitted passages.  <u>United States v. Mitchell</u>, 502 F.3d 931, 965 (9th Cir. 2007); <u>United States v. Collicott</u>, 92 F.3d 973, 983 (9th Cir. 1996) (holding that Federal Rule of Evidence 106 does not compel admission of otherwise inadmissible hearsay evidence); <u>see also</u> <u>United States v. Lopez-Figueroa</u>, 316 F. App'x 548, 550 (9th Cir.

2008) (defendant could not introduce own statements redacted from confession by government).  As the Ninth Circuit has recognized, "it is often perfectly proper to admit segments . . . without including everything, and adverse parties are not entitled to offer additional segments just because they are there and the proponent has not offered them."  Collicott, 92 F.3d at 983.

Defendant has not identified any of his own statements that he seeks to admit under the rule of completeness; however, defendant has indicated that he intends to seek the introduction of his own statements noted above.

### 3.   Statements to Defendant

The government intends to introduce statements of people in conversation with the defendant, including statements by Officers J.R. and Chayloyan during their encounter with the defendant on January 29, 2020.  The statements are not offered for their truth, but to provide context for what the defendant said or did, and thus, are not hearsay.  Fed. R. Evid. 801(c); see also United States v. Valerio, 441 F.3d 837, 844 (9th Cir. 2006) (informant's statements on a recording are admissible to give context to defendant's statements).

### D.   Scope of Cross-Examination by Defendant

If defendant testifies at trial, he waives his right against self-incrimination, and the government may cross-examine him on all matters reasonably related to the subject matter of his testimony. See, e.g., United States v. Black, 767 F.2d 1334, 1341 (9th Cir. 1985) ("What the defendant actually discusses on direct does not determine the extent of permissible cross-examination or his waiver. Rather, the inquiry is whether 'the government's questions are

12

1   reasonably related' to the subjects covered by the defendant's

2   testimony.") (internal quotations and citation omitted).  The scope

3   of cross-examination is within the discretion of the trial court.

4   Fed. R. Evid. 611(b).  Defendant has no right to avoid cross-

5   examination on matters that call into question his claim of

6   innocence.  United States v. Miranda-Uriarte, 649 F.2d 1345, 1353-54

7   (9th Cir. 1981).

8           **E.   Lay Opinion Testimony**

9           Witnesses will testify about defendant's statements and

10   demeanor, including their opinions and impressions of his statements

11   and demeanor.  Federal Rule of Evidence 701 "permits a lay witness to

12   give opinion testimony as long as the opinion is (a) rationally based

13   on the perception of the witness and (b) helpful to a clear

14   understanding of the witness's testimony or the determination of a

15   fact in issue."  United States v. Pino-Noriega, 189 F.3d 1089, 1097

16   (9th Cir. 1999) (quotation marks omitted).  Under Ninth Circuit law,

17   opinion testimony by law enforcement officers is admissible and not

18   necessarily expert testimony within the meaning of Rule 16(a)(1)(G).

19   See United States v. VonWillie, 59 F.3d 922, 929 (9th Cir. 1995).  As

20   the Ninth Circuit has explained, law enforcement officers' opinion

21   testimony:

22           is a means of conveying to the jury what the witness has seen
             or heard. . . . Because it is sometimes difficult to describe
23           the mental or physical condition of a person, his character
             or reputation, the emotions manifest by his acts; speed of a
24           moving object or other things that arise in a day to day
             observation of lay witnesses; things that are of common
25           occurrence and observation, such as size, heights, odors,
             flavors, color, heat, and so on; witnesses may relate their
26           opinions   or   conclusions   of   what   they   observed.

27   United States v. Skeet, 665 F.2d 983, 985 (9th Cir. 1982); see also

28   United States v. Gadson, 763 F.3d 1189, 1209 (9th Cir. 2014) ("[A]n

investigator who has accumulated months or even years of experience with the events, places, and individuals involved in an investigation necessarily draws on that knowledge when testifying; indeed, it is those out-of-court experiences that make the witness's testimony helpful to the jury."). The witnesses' opinion testimony and conclusions will be helpful to the jury and their opinions do not require expert knowledge.

### F. Character Evidence

Rule 404(a) of the Federal Rules of Evidence governs the admissibility of character evidence. The Supreme Court has recognized that character evidence -- particularly cumulative character evidence -- has weak probative value and great potential to result in confusion of the issues and prejudice the jury. <u>Michelson v. United States</u>, 335 U.S. 469, 480, 486 (1948). The Court has thus given trial courts wide discretion to limit the presentation of character evidence. <u>Id.</u> at 486. Rule 404(a) permits a defendant to introduce evidence only of a "pertinent" trait of character. A non-pertinent or misleading character trait is not admissible. For instance, evidence of defendant's family status is irrelevant to whether defendant is believable and law-abiding, and is thus inadmissible. <u>See United States v. Santana-Camacho</u>, 931 F.2d 966, 967-68 (1st Cir. 1991) (testimony of defendant's daughter purportedly showing that defendant was a good family man was inadmissible character evidence inasmuch as such character traits were not pertinent to charged crime of illegally bringing aliens into the United States).

As a general rule, character witnesses called by defendant may not testify about specific acts demonstrating a particular trait or

other information acquired only by personal observation and interaction with the defendant; the witness must summarize the reputation or opinion of the defendant as known in the community. Fed. R. Evid. 405(a); Michelson v. United States, 335 U.S. 469, 477 (1948); United States v. Hedgcorth, 873 F.2d 1307, 1313 (9th Cir. 1989). On cross-examination of a defendant's character witness, however, the government may inquire into specific instances of defendant's past conduct relevant to the character trait at issue. Fed. R. Evid. 405(a). In particular, a defendant's character witnesses may be cross-examined about their knowledge of the defendant's past crimes, wrongful acts, and arrests. Michelson, 335 U.S. at 479, 481 n.18. The only prerequisites are that: (1) there be a good faith basis that the incidents inquired about occurred; and (2) the incidents are relevant to the character trait at issue. United States v. McCollom, 664 F.2d 56, 58 (5th Cir. 1981); United States v. Bright, 588 F.2d 504, 512 (5th Cir. 1979).

Should defendant offer evidence of a "pertinent" trait during this trial, and defendant has not disclosed any intent to do so at this time, the government is permitted to offer evidence, including rebuttal witness, to rebut it pursuant to Rule 404(a)(2)(A). See United States v. Giese, 597 F.2d 1170, 1190 (9th Cir. 1979).

Should defendant offer evidence of a "pertinent" trait of victim J.R., and if the evidence is admitted, the government may offer evidence to rebut it, and offer evidence of the defendant's same trait, pursuant to Rule 404(a)(2)(B).

In particular, under Federal Rule of Criminal Procedure 405, should defendant attempt to offer evidence that victim J.R. had a violent or aggressive character in connection with a potential self-

1   defense claim, defendant is precluded from offering specific acts
2   evidence and instead may only offer reputation or opinion evidence.
3   See United States v. Keiser, 57 F.3d 847, 855 (9th Cir. 1995) ("No
4   published opinion of this Court has addressed whether Rule 405(b)
5   authorizes a defendant claiming self-defense to introduce specific
6   acts demonstrating his victim's propensity for violence.  We
7   conclude, however, that the language of the rule, the teaching of
8   out-of-Circuit authority, and the theory supporting admission of
9   victim character evidence all lead to the conclusion that victim
10  character evidence introduced to support a claim of self-defense or
11  defense of another should be limited to reputation or opinion
12  evidence."

13         **G.    Defendant's Testimony Regarding Character/Impeachment by**
                **Contradiction**
14

15         Unlike character witnesses, who must restrict their testimony to
16  opinion or appraisal of a defendant's reputation, a defendant-witness
17  may cite specific instances of conduct as proof that he possessed a
18  relevant character trait.  Giese, 597 F.2d at 1190.  However, "[o]nce
19  a witness (especially a defendant-witness) testifies as to any
20  specific fact on direct testimony, the trial judge has broad
21  discretion to admit extrinsic evidence tending to contradict the
22  specific statement, even if such statement concerns a collateral
23  matter in the case."  Id. at 1190 (citation omitted).  Thus, if
24  defendant testifies to specific instances of conduct supportive of
25  good character, he opens the door to extrinsic rebuttal evidence on
26  all reasonably related matters, be they "collateral" or not.  Giese,
27  597 F.2d at 1190.

28

                                    16

The distinction between the proper use of extrinsic evidence to impeach by contradiction under Rule 607 and the impermissible use of extrinsic evidence under Rule 608 was explained by the Ninth Circuit in United States v. Castillo, 181 F.3d 1129 (9th Cir. 1999). As the Castillo Court noted, Rule 608(b) prohibits the use of extrinsic evidence of conduct to impeach a witness's credibility in terms of his general veracity. Id. at 1132. However, the government may, under Rule 607, introduce extrinsic evidence that contradicts a defendant's specific testimony to demonstrate that such testimony is false. Id. at 1133-34. Therefore, should the defendant, or any other witness, testify during this trial concerning defendant's good or peaceable character, or any other relevant fact, that the government can contradict through evidence, including extrinsic evidence, the court may properly admit such evidence. See id. (district court's decision to admit extrinsic evidence of defendant's prior cocaine arrest, in the form of a government rebuttal witness, to refute defendant's testimony that he was a model citizen who stayed away from drugs was proper).

In particular, should defendant, or any other witness, testify concerning defendant's peaceable character, the government intends to impeach defendant or such witness by contradiction with extrinsic evidence of the following prior acts:

- In January 2020 -- less than two weeks before defendant assaulted and bit J.R. -- defendant attempted to bite his ex-girlfriend's face during a domestic dispute that led to defendant's arrest and conviction for entering a non-commercial dwelling, namely, his ex-girlfriend's apartment, in violation of California Penal Code § 602.5(a).

17

- In December 2011, defendant was convicted of battery, in violation of California Penal Code § 242, after he grabbed the buttocks of a female bus driver and subsequently punched the bus windshield until it broke.

## H.   Defendant Should Be Precluded From Introducing Evidence Not Produced In Discovery

Rule 16 of the Federal Rules of Criminal Procedure creates certain reciprocal discovery obligations on the part of defendants to produce three categories of materials that they intend to introduce as evidence at trial: (1) documents and tangible objects; (2) reports of any examinations or tests; and (3) expert witness disclosure. Rule 16 imposes on defendants a continuing duty to disclose these categories of materials.  Fed. R. Crim. P. 16(b)(1)(A), (b)(1)(C), and (c).  In those circumstances where a party fails to produce discovery as required by Rule 16, the rule empowers the district court to "prohibit the party from introducing evidence not disclosed, or it may enter such other order as it deems just under the circumstances."  Fed. R. Crim. P. 16(d)(2)(C) and (D).

## I.   Affirmative Defenses

### 1.   Insanity Defense

The deadline for defense counsel to provide notice of an insanity defense was November 9, 2020. (Dkt. 46 at 6.)  Defendant provided no such notice.  Defendant has therefore waived an insanity defense.  See Fed. R. Crim. Pro 12.2(a).

### 2.   Mental Incapacity / Mental Health Issues

Additionally, defendant has not given notice of any intent to rely on any defense of entrapment, mental incapacity, alibi, or any other affirmative defense, and during a phone call on June 30, 2021,

18

defense counsel stated specifically that defendant does not plan to raise a defense of mental incapacity.

Nor has defendant provided notice to the government of his intent to introduce expert evidence relating to any "mental disease or defect or any other mental condition of the defendant bearing on . . . the issue of guilt," as required by Federal Rule of Criminal Procedure 12.2(b).  Fed. R. Crim. Pro. 12.2(b).  Consequently, defendant should be precluded from offering such evidence at trial. See Fed. R. Crim. Pro. 12.2(d)(1)(A) ("The court may exclude any expert evidence from the defendant on the issue of the defendant's mental disease, mental defect, or any other mental condition bearing on the defendant's guilt . . . if the defendant fails to . . . give notice under Rule 12.2(b))."  Defendant should also be precluded from belatedly notifying the government of its intent to introduce expert evidence relating to defendant's mental disease, defect, or condition.  With trial commencing in one week, the government will be unable to move the Court, pursuant to Federal Rule of Criminal Procedure 12.2(c)(1)(B), "to order the defendant to be examined under procedures ordered by the court" before the trial commences.  Fed. R. Crim. Pro. 12.2(c)(1)(B).

Therefore, to the extent defendant attempts to rely on a mental incapacity defense or introduce evidence that serves no other purpose besides supporting such defense, the government reserves the right to object and to move to preclude the defendant from offering such defense and evidence, including, but not limited to:  (1) any medical records relating to defendant's mental health issues, including defendant's medical records from Mission Community Hospital; (2) any reference or evidence relating to defendant being placed on an

involuntary psychiatric hold pursuant to California Welfare and Institutions Code § 5150, and (3) any records relating to defendant's 2012 and 2017 applications for Social Security Income disability benefits based on his claims that he (i) had sustained a head injury; (ii) was previously shot and (iii) suffers from mental health issues such anxiety, comprehension problems, hearing voices, and seeing spirits.

### 3.  Self-Defense

Self-defense is an affirmative defense to the charge in the indictment only if:  (1) a defendant reasonably believed that it is necessary for the defense of oneself against the immediate use of unlawful force, and (2) defendant used no more force than appeared reasonably necessary under the circumstances.  Ninth Circuit Manual of Model Jury Instructions, No. 6.8 (2010 ed.) (modified to reflect facts of the case); United States v. Biggs, 441 F.3d 1069, 1071 (9th Cir. 2006); see also United States v. Urena, 659 F.3d 903, 907 (9th Cir. 2011) ("[T]he privilege of claiming self defense as a justification for an assault is constrained by the need for an immediate threat of unlawful force, and the need for the action to be commensurate with the threat, with no more force used than reasonably necessary to meet it.").

Unlawful force includes excessive force by law enforcement. United States v. Ornelas, 906 F.3d 1138, 1148 (9th Cir. 2018); United States v. Span, 970 F.2d 573 (9th Cir. 1992).

### J.  Jury Nullification

A jury may "bring in a verdict in the teeth of both law and facts."  Horning v. District of Columbia, 254 U.S. 135, 138 (1920), not followed on other grounds, United States v. Gaudin, 515 U.S. 506,

1   520 (1995); <u>United States v. Dougherty</u>, 473 F.2d 1113, 1133 (D.C.

2   Cir. 1972).  Recognition of that power, however, does not countenance

3   admission of evidence or argument supporting jury nullification.  <u>See</u>

4   <u>United States v. Powell</u>, 955 F.2d 1206, 1213 (9th Cir. 1991).

5       A defendant is not entitled to present evidence or argument

6   solely to promote jury nullification.  "[N]either a defendant nor his

7   attorney has a right to present to a jury evidence that is irrelevant

8   to a legal defense to, or an element of, the crime charged.  Verdicts

9   must be based on the law and the evidence, not on jury nullification

10  as urged by either litigant."  <u>Zal v. Steppe</u>, 968 F.2d 924, 930 (9th

11  Cir. 1992) (concurring opinion); <u>see also United States v. Gorham</u>,

12  523 F.2d 1088, 1097-98 (D.C. Cir. 1975).  Unless specifically

13  authorized by statute, juries must reach their verdicts "without

14  regard to what sentence might be imposed."  <u>Roaers v. United States</u>,

15  422 U.S. 35, 40 (1975).  As a result, "it is improper to inform the

16  jury of the defendant's possible punishment."  <u>United States v.</u>

17  <u>Jones</u>, 933 F.2d 807, 811 (10th Cir. 1991).

18

19

20

21

22

23

24

25

26

27

28